UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
ELIZABETH BENIQUEZ,                     :
                                        :
                    Plaintiff,          :      23cv7735 (DLC)
                                        :
          -v-                           :      OPINION AND
                                        :      ORDER
NEW YORK STATE UNIFIED COURT SYSTEM     :
and GERALD FILOMIO,                     :
                                        :
                    Defendants.         :
                                        :
--------------------------------------- X

APPEARANCES:

For plaintiff Elizabeth Beniquez:
Liane Fisher
Fisher Taubenfeld LLP
225 Broadway, Suite 1700
New York, NY 10007

For defendant New York State Unified Court System:
Daniel M. Braun
NYS Office of Court Administration
Counsel's Office
25 Beaver Street, 10th Floor
New York, NY 10004

For defendant Gerald Filomio:
Michael DiBenedetto
John Esposito
Aidala, Bertuna & Kamins, P.C.
546 5th Avenue, 6th Floor
New York, NY 10036

DENISE COTE, District Judge:

    Elizabeth Beniquez, an employee of the New York State

Unified Court System ("UCS"), has sued UCS and another UCS

employee, Gerald Filomio, for sexual harassment.  Following the

completion of discovery, both defendants have moved for summary judgment on each of Beniquez's claims.  For the following reasons, UCS's motion is granted, and Filomio's motion is granted in part.

## Background

The following facts are taken from the evidence submitted in connection with the summary judgment motions.  The facts are undisputed or taken in the light most favorable to the plaintiff, unless otherwise noted.

Beniquez was employed by UCS as a court officer beginning in June 2017.  Until October 2022, she was assigned to the Bronx Criminal Court.  From soon after starting work at UCS until the summer of 2021, Beniquez experienced inappropriate behavior by two sergeants, Rafael Nieves and Julio Lebron.  She filed a complaint against Lebron with the UCS Inspector General's Office ("OIG"), which is responsible for investigating formal claims of work-related bias involving UCS employees.  The OIG concluded its investigation in May 2022, finding that Beniquez's allegations were not substantiated.

Beniquez began working with Filomio in 2017, when they were both court officers.  Filomio later was promoted to sergeant, a role in which he was Beniquez's union delegate and supervised her if they were working in the same area.  In the middle of

2

2020, Beniquez was assigned to magnetometers in the court's main lobby, where Filomio was in charge of the area. They remained in touch when Beniquez was assigned to other areas of the courthouse in spring 2021. And according to Beniquez, she had to follow Filomio's orders regardless of their respective assignments due to his status as a sergeant. Beniquez principally complains of Filomio's treatment of her between July and September of 2021.

A.    July 2021 Interactions

On the morning of July 10, 2021, Filomio called Beniquez on her personal cell phone. His voice shaking, Filomio said he needed to hear her voice. The conversation lasted a few minutes. Because of Filomio's emotional tone and comment about wanting to hear her voice, Beniquez thought he was expressing romantic feelings to her.

A few hours later, Filomio texted Beniquez, "If I'm ever being weird or creepy you would tell me . . . right? I have no scale." Filomio later said he understood that the comment about wanting to hear Beniquez's voice had bothered her. Beniquez told him that she had found that comment strange and that she would let him know in the future if he ever made her uncomfortable.

The following Monday, July 12, Filomio visited the courtroom in which Beniquez was stationed.  While shaking, he apologized for making the comment about hearing Beniquez's voice.  He then grabbed Beniquez by the waist and kissed her on the neck.  Beniquez pulled back, and Filomio repeatedly said, "I'm sorry.  Thank you for being understanding," before leaving. Over the next couple of days, Filomio approached Beniquez at work about personal matters on multiple occasions.

On the evening of July 15, Beniquez found in her mailbox at home an envelope that appeared to have been hand-delivered.  It was labeled "LIZ B," and it contained a spa gift certificate and the message "Enjoy your Spa Day Princess.  Hope this makes you smile."  It also included another note that read,

> I see you (But not in a creepy way).  Go and be treated like a princess.  I hope this puts a smile on your face and makes you feel special, because you are. Things will get better.  I promise.  Just hang in there a little longer.  I will hang with you.  Love always, Your Friend Jerry.

Beniquez was extremely upset and reported the incident to Sergeant George Green by telephone the same day.

Beniquez then texted Filomio, asking if he had put the gift certificate in her mailbox.  He responded, "Hi.  I'm guilty detective. . . .  Are you upset with me?".  Beniquez explained that Filomio was not respecting her space and that his conduct was exacerbating her stress.  She said she did not want any more

4

"gestures" or gifts from him.  Filomio said he meant the gift
certificate as a friendly gesture.  He said he gave the gift
certificate because Beniquez had mentioned wanting a spa day
earlier that month, and he said he thought he could be both
Beniquez's union representative and her friend.  Beniquez said
she appreciated Filomio "making it clear that there is no
attraction.  It certainly puts me at ease."  Filomio said that
"You were attractive when I met you years ago, only recently as
I began to know you did I feel anything for you."  Beniquez said
that the two were "good" but asked Filomio to respect her "space
other than for official business right now."  Several days
later, on July 19, the two met in person at Filomio's
suggestion, and he again apologized for his behavior.

B.    Subsequent Interactions

Beginning in August 2021, Filomio began showing up in
Beniquez's courtroom and sitting in the gallery during
proceedings, even when he was not assigned to work there.  On at
least three of those occasions, Filomio asked her to step out of
the courtroom to speak with him.  During these interactions,
Filomio suggested they communicate while he was on vacation and
asked Beniquez to have drinks with him.

Around the same time, Beniquez had a telephone conversation
with Green about Filomio's conduct.  He said he was "sorry" and

encouraged her to take notes but, to Beniquez's knowledge, did nothing else about the complaint.

While Filomio was on vacation in August 2021, he sent Beniquez a long text message apologizing for his behavior. She again said she did not want to be contacted by him. When, on August 15, Filomio texted Beniquez about staffing night court, she responded that, because he had made her uncomfortable, he should in the future "have the other supervisor on duty call me."

In late August and September, Filomio continued calling Beniquez, texting her, and showing up in her courtroom. He continued doing so even after Beniquez asked him to stay away from her and he agreed to do so. On September 8, Filomio texted Beniquez claiming that he wanted to talk to her about work. When they met, Filomio offered to escort her to an interview with the OIG, which she declined. Finally, in response to a text message on September 21, Beniquez again asked Filomio not to contact her about personal matters. She said she was blocking Filomio's telephone number and that, if he came into her courtroom to speak with her again, she would walk out.

C.   Beniquez's Formal Complaint

On September 27, Beniquez submitted a formal complaint about Filomio's conduct. Her complaint was forwarded to the OIG

and Deputy Chief Administrative Judge ("DCAJ").  Major Clemont
Mack sent Beniquez the UCS policies and forms related to sexual
harassment and workplace violence.  He also spoke with Filomio
and told him not to have any contact with Beniquez.  The next
day, the DCAJ revoked Filomio's firearm privileges.

On October 1, 2021, Filomio sent Beniquez a text that
included an image of their prior communications.  Beniquez told
Mack about the text message and that she believed she had found
saliva on her car window.  Beniquez's complaint was forwarded to
the OIG and DCAJ.

The same month, October 2021, Filomio called the courtroom
in which Beniquez was working on numerous occasions.  Filomio
and Beniquez did not speak, but the officers who picked up the
telephone later told Beniquez that Filomio asked if she was
there.

In the middle of February 2022, Beniquez told Mack that
Filomio was continuing to make her uncomfortable by calling her
courtroom.  There is no evidence that Filomio spoke with
Beniquez during these calls.  Mack asked if she wanted to file a
formal complaint, and she said she did not.  Mack's report of
this conversation was forwarded to the OIG and DCAJ.  Mack also
told Filomio that his calls were making Beniquez uncomfortable
and Filomio should communicate with officers in that courtroom

in a different way.  Soon after, Beniquez was moved to a
different courtroom, where she did not experience further
contact from Filomio.

    D.    Investigation of Allegations Against Filomio

    The OIG interviewed Beniquez about her September 2021
complaint against Filomio on October 20, 2021.[1]  The OIG
requested to interview Filomio beginning in November 2021, but
he was ultimately interviewed on May 4, 2022.

    The OIG found Beniquez's allegations against Filomio to be
substantiated, and on July 7, 2022 formally commenced
disciplinary proceedings against him.  A hearing was held on
January 25, 2023.  On June 22, 2023, the hearing officer issued
a report and recommendation that Filomio be suspended without
pay for three months.  On August 3, 2023, the DCAJ concurred
with the report and suspended Filomio.

    E.    Beniquez's Lawsuit

    Beniquez filed a charge of discrimination against UCS with
the Equal Employment Opportunity Commission ("EEOC") on November
7, 2022.  The EEOC issued a Notice of Right to Sue to Beniquez
June 22, 2023.

---

[1] According to the OIG's report, Beniquez was interviewed on
September 28, 2021.  The reason for this discrepancy is not
clear from the record.

Beniquez filed this action on August 30, 2023. The original complaint alleged discrimination as well as retaliation in violation of federal, state, and city law. The plaintiff filed her First Amended Complaint ("FAC") on May 3, 2024. On October 17, the parties submitted a stipulation in which the plaintiff voluntarily dismissed her retaliation claims with prejudice. Fact discovery closed on October 18.

On November 15, 2024, both defendants moved for summary judgment on all of the remaining claims against them. Those motions were fully briefed on January 10, 2025.

## Discussion

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts that "might affect the outcome of the suit under the governing law." Choi v. Tower Rsch. Cap., LLC, 2 F.4th 10, 16 (2d Cir. 2021) (citation omitted). "[S]ummary judgment must be rejected if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Indemn. Ins. Co. of N. Am. v. Unitrans Int'l Corp., 98 F.4th 73, 77 (2d Cir. 2024) (citation omitted). "The court's role with respect to such a motion is not to resolve disputed questions of fact but solely to

determine whether, as to any material fact, there is a genuine issue to be tried." Moll v. Telesector Res. Grp., Inc., 94 F.4th 218, 227 (2d Cir. 2024) (citation omitted).

The plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law. § 290 et seq. ("NYSHRL"); and the New York City Admin. Code § 8-101 et seq. ("NYCHRL"). All three claims initially were brought against UCS, but the parties now agree that sovereign immunity bars the state and city law claims, so only the Title VII claim remains against that defendant. Beniquez brings only the state and city law claims against Filomio. Because the claims against each defendant raise different legal and factual issues, they are addressed separately below.

II. Defendant UCS

In her only remaining claim against UCS, Beniquez alleges that UCS violated Title VII by subjecting her to a hostile work environment. UCS argues that this claim is both untimely and substantively meritless. It contends that it took reasonable care to address the reports of sexual harassment and Beniquez failed to use the recourse she was offered. Because UCS is correct that Beniquez's claim is untimely, it is unnecessary to address its remaining arguments.

A Title VII hostile work environment claim requires "both objective and subjective elements." Moll, 94 F.4th at 228-29. "The misconduct shown must have been severe or pervasive enough to create an objectively hostile or abusive work environment, that is, an environment that a reasonable person would find hostile or abusive." Id. at 229 (citation omitted). Also, "the victim must have subjectively perceived the environment to be abusive." Id. (citation omitted). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (citation omitted). "To survive summary judgment on a claim of hostile work environment harassment, a plaintiff must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Banks v. Gen. Motors, LLC, 81 F.4th 242, 261 (2d Cir. 2023) (citation omitted).

To bring a Title VII discrimination claim, including one alleging a hostile work environment, a plaintiff must have filed a charge with the EEOC or state administrative agency within "300 days after the alleged unlawful employment practice occurred." King v. Aramark Servs. Inc., 96 F.4th 546, 559 (2d

11

Cir. 2024).  While a "practice" may refer to a single
occurrence, a "continuing violation" may also arise when
"specific and related instances of discrimination are permitted
by the employer to continue unremedied for so long as to amount
to a discriminatory policy or practice." Id. (citation
omitted).  A continuing violation may exist when "incidents that
give rise to a hostile work environment occur over a series of
days or perhaps years and a single act of harassment may not be
actionable on its own." Id. at 559-60 (citation omitted).
Accordingly, "if an act contributing to the hostile environment
occurs within the filing period, the hostile work environment
claim is timely," even though it depends on conduct that took
place outside of the limitations period. Id. at 560 (citation
omitted).  But this doctrine applies "only if the plaintiff
establishes that [timely] discrete act was part of the ongoing
discriminatory practice that created a hostile work
environment." Id. at 561.

Beniquez's claim fails because there is no timely,
discriminatory act that could be attributed to UCS.  The parties
agree that the date before which conduct is untimely is January
11, 2022, that is, 300 days before she filed her November 7,
2022 EEOC complaint.  Beniquez last saw Filomio about four
months earlier, on September 8, 2021.  On September 27, she made

12

a formal complaint about him, and Mack told Filomio to have no further contact with Beniquez.  Beniquez does not suggest that any harassing conduct took place after January 11, 2022, with perhaps one exception: Filomio called the courtroom in which she was working and spoke with other court officers.[2]  This allegation does not amount to a showing that any hostile work environment that may have existed before January 11, 2022 continued thereafter.  There is no evidence or allegation that Filomio so much as spoke to Beniquez after that date.  Even if Filomio engaged in harassing conduct before January 2022 (and that conduct could be imputed to UCS), merely calling other coworkers in the room where Beniquez was assigned does not amount to an instance of sex-based discrimination.  Accordingly, summary judgment is granted to UCS on her Title VII claim.

III. Defendant Filomio

Beniquez also seeks to hold Filomio individually liable for creating a hostile work environment in violation of state and city law.  Filomio argues that he cannot be held individually liable for his own conduct and that, even if he could, he did

---

[2] The plaintiff's attempt to suggest that her Title VII claim is timely due to mistreatment by Lebron fails.  Her declaration and the factual background of her brief refer to a June 2021 interaction as the last objectionable conduct by Lebron.

13

not participate in any unlawful conduct.  Those arguments
largely fail, and his motion is granted only in part.

    A.   Governing Law of Individual Liability

    Both the NYCHRL and NYSHRL allow for individual liability
for a person's involvement in discrimination, depending on their
supervisory role.  Under the NYSHRL, which prohibits
discrimination by employers, a "supervisor is an employer . . .
if that supervisor actually participates in the conduct giving
rise to the discrimination." Feingold v. New York, 366 F.3d
138, 157 (2d. Cir. 2004) (citation omitted).  In addition, the
NYSHRL makes it unlawful "for any person to aid, abet, incite,
compel or coerce" discrimination.  N.Y. Exec. L. § 296(6).  The
Second Circuit has interpreted that language to allow "a co-
worker who actually participates in the conduct giving rise to a
discrimination claim to be held liable under the NYSHRL even
though that co-worker lacked the authority to either hire or
fire the plaintiff." Feingold, 366 F.3d at 158 (citation
omitted).

    Similarly, the NYCHRL prohibits discrimination by "an
employer or an employee or agent thereof."  N.Y.C. Admin. Code §
8-107(1)(a) (emphasis added).  Individual liability is analyzed
according to the same standard under the NYCHRL as it is under
state law. Feingold, 366 F.3d at 158; Williams v. N.Y.C.

Housing Auth., 61 F.4th 55, 76-77 (2d Cir. 2023).  Like the NYSHRL, the NYCHRL "provides for liability for individual employees for discrimination when those employees have some supervisory role over the victim of their discrimination." Russell v. N.Y. Univ., 42 N.Y.3d 377, 389 (N.Y. 2024).  That requirement is construed "broadly, to include not just those with formal managerial or titular authority over a plaintiff, but as applicable to those who wield any ability to dictate or administer the compensation, terms, conditions, or privileges of the plaintiff's employment."  Id. at 390.

B.   Application

Beniquez has raised triable issues of fact as to whether Filomio participated in the creation of a hostile work environment under the NYSHRL and NYCHRL.  A reasonable jury could find both that Filomio had a supervisory or managerial role in relation to Beniquez, and that he created a sex-based hostile work environment in which Beniquez was treated "less well" because of her gender.

1.   Supervisory Relationship

First, the plaintiff has made a sufficient showing that, during the relevant time period, Filomio was in a supervisory role with respect to Beniquez.  In addition to Beniquez's own description of Filomio's role, Filomio himself testified that he

15

had "supervisory responsibilities" over the officers assigned to his part of the courthouse, and that a more junior officer would be required to follow a directive he gave.

Filomio argues that, as the plaintiff's union delegate and fellow employee of UCS, he cannot be an "employer" or otherwise liable as a supervisor under applicable law. But individual liability does not require "formal managerial or titular authority over a plaintiff" and extends to "those who wield any ability to dictate or administer the compensation, terms, conditions, or privileges of the plaintiff's employment." Russell, 42 N.Y.3d at 390. And Filomio's suggestion that his status as another UCS employee protects him from liability does not square with the NYSHRL and NYCHRL's contemplation of employee liability. Even if Filomio's title of "sergeant" does not by itself establish him as a supervisor or manager, Beniquez has offered evidence that Filomio had control over her assignments and that she answered to him when on certain assignments. Drawing all reasonable inferences in favor of Beniquez, the record does not warrant judgment as a matter of law that Filomio was not a supervisor as understood under the NYSHRL and NYCHRL.

2.    Participation in a Hostile Work Environment

Under the NYCHRL and NYSHRL, "the plaintiff need only show differential treatment -- that she is treated less well -- because of discriminatory intent," regardless of the treatment's severity and pervasiveness.[3] Mihalik, 715 F.3d at 110 (citation omitted). Even so, "the NYCHRL is not a general civility code" and a defendant may "avoid liability if the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences." Williams, 61 F.4th at 69 (citation omitted).

Beniquez has presented sufficient evidence to raise a question of fact as to whether Filomio created or participated in a hostile work environment. She has submitted evidence that, beginning in July 2021, he engaged in a series of unwanted communications and gestures that may have been reasonably perceived as romantic or sexual advances. These communications included the spa gift certificate, offers of other gifts,

---

[3] The NYCHRL is construed more liberally than its federal counterpart. Mihalik v. Credit Agricole Cheuvreux  N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013). And while the NYSHRL once aligned with Title VII, the Second Circuit has recently explained in the context of retaliation claims that "it was amended in 2019 to align with the NYCHRL's more liberal pleading standard." Qorrolli v. Metro. Dental Assocs., 124 F.4th 115, 122-23 (2d Cir. 2024). That reasoning appears to apply with equal force to a hostile work environment claim under the NYSHRL, which were also construed in alignment with Title VII. See Banks, 81 F.4th at 261-62.

17

repeated contact without professional justification at work and elsewhere, and telling Beniquez she was attractive, that he wanted to hear her voice, and that "only recently as I began to know you did I feel anything for you."  On one occasion, July 12, Beniquez alleges that these advances became physical, when she says Filomio grabbed her by the waist and kissed her on the neck.  Filomio's unwanted personal communications continued after Beniquez repeatedly and explicitly asked that they stop, and she says that Filomio induced her to speak with him by falsely telling her he wanted to talk about work.  Many of these interactions happened within the workplace and while Beniquez says she was in a subordinate position with respect to Filomio, such that she felt she could not be seen as rejecting his requests.

Altogether, Beniquez has a raised a triable issue of fact as to whether Filomio's conduct created a gender-based hostile work environment affecting the "conditions" of her employment, and thus that she was treated "less well" because of her gender in violation of the NYSHRL and NYCHRL.  Based on the present record, a reasonable jury could find that Filomio's unwanted advances amounted to gender-based harassment that exceeded "petty slights and trivial inconveniences."  Williams, 61 F.4th at 69 (citation omitted).

18

Filomio presents no compelling argument to the contrary. He argues first that Beniquez has not shown that his conduct was gender-based, but she has.[4]  See, e.g., Desardouin v. City of Rochester, 708 F.3d 102, 105-06 (2d Cir. 2013) (noting that a showing of repeated advances warrant trial on a sex-based hostile work environment claim even under Title VII's higher bar).  Filomio points out that he was not involved in any disciplinary action or other employment decision affecting Beniquez.  But neither NYSHRL nor NYCHRL claims require such a showing.  Mihalik, 715 F.3d at 110 ("[T]he challenged conduct need not even be tangible (like hiring or firing)." (citation omitted)).  Finally, Filomio argues that his conduct amounted to friendly support rather than harassment.  Whether that characterization or the plaintiff's is more apt is for the jury to decide and cannot be resolved on a motion for summary judgment.

C.  Aiding and Abetting

In addition to providing for direct liability of a supervisor, both the NYSHRL and NYCHRL prohibit the aiding and abetting of discriminatory conduct.  N.Y. Exec. L. § 296(6);

---

[4] Filomio's argument that Beniquez has failed to allege that his conduct was "purely gender-based" implies a misunderstanding of the law, which requires only that the plaintiff show she was treated less well "at least in part for a discriminatory reason."  Williams, 61 F.4th at 69.

N.Y.C. Admin. Code § 8-107(6).  Beniquez argues that Filomio
violated these provisions as well, and Filomio moves for summary
judgment on those claims.

An aiding-and-abetting claim under the NYSHRL requires (A)
proof of an underlying violation, that is, that the employer or
an individual with some supervisory authority violated the
NYSHRL and (B) proof that the defendant aided and abetted that
conduct by "actually participat[ing] in the conduct giving rise
to a discrimination claim."  Feingold, 366 F.3d at 158 (citation
omitted).  The standard for an NYCHRL aiding-and-abetting claim
is the same.  Id.  With such proof, a coworker without
supervisory authority may be liable under these statutes.  Id.

Beniquez's aiding-and-abetting claim is based on the
allegation that Filomio aided and abetted his own harassing
conduct.  That is, her aiding-and-abetting theory arises from
the same set of facts as her direct liability theory.  A
defendant cannot aid and abet his own conduct.  In any event,
since the aiding and abetting claims are based on the same facts
as the direct liability claims, they are entirely duplicative
and raise no separate triable issue.

Insofar as Beniquez claims that Filomio aided and abetted
discriminatory conduct by others, which her brief frames as
argued in the alternative, that theory fails.  Beniquez cites

caselaw for the proposition that a supervisor violates the NYSHRL when they fail to take appropriate action in response to a complaint of harassment or discrimination. She argues that Green and Lieutenant Aysh-sha Burwell did not properly elevate her complaint about receiving the spa gift certificate from Filomio. And she posits that the OIG took too long to investigate her complaints. This theory has multiple deficiencies. Perhaps most importantly, Beniquez has not explained how -- much less raised a triable issue of fact as to whether -- Filomio aided and abetted Green, Burwell, or the OIG's alleged failure to respond appropriately to her complaints.

## Conclusion

UCS's November 15, 2024 motion for summary judgment is granted. Filomio's November 15, 2024 motion for summary judgment is granted in part.

Dated:    New York, New York
         March 18, 2025

_____
DENISE COTE
United States District Judge